UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John A. Berscheid,

    Plaintiff,

v.

Northwest Respiratory Services,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 09-3392

_____

    Stephen C. Fiebiger, Stephen C. Fiebiger & Associates, Chartered, Counsel for Plaintiff.

    William E. Flynn and Kelly G. Laudon, Lindquist & Vennum PLLP, Counsel for Defendant.

_____

    Plaintiff brings this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 et. seq. and the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.25, subd.1.  Plaintiff alleges that he was employed on an hourly basis as a non-exempt employee of Defendant Northwest Respiratory Services ("NRS") and that he was not paid overtime as required by law.

    This matter is before the Court on the parties' cross motions for summary

1

judgment.

I.  **Factual Background**

NRS provides medical oxygen and respiratory products and services to clients in their homes or in nursing homes. (Laudon Affidavit, Ex. B (Larson Deposition at 6).) In September 2006, Plaintiff began employment with NRS as a branch manager/respiratory therapist ("RT"). (Id., Ex. A (Berscheid Deposition at 13, Dep. Ex. 2).) Prior to working for NRS, Plaintiff was an RT for the Veterans Administration for twenty four years. (Id. (Berscheid Dep. at 10-11).) Prior to his hire, Plaintiff requested a salary of $56,000 per year but ultimately accepted a rate of pay of $54,000 per year. (Id., (Berscheid Dep. at 13-14; Dep. Ex. 2).)

As a branch manager, Plaintiff's duties included directing the daily operations of the branch, facilitating communications between the branch and the corporate office, dispatching employees, setting up routes, vehicle maintenance, office supplies, inventory, data collection, regulatory compliance, hiring and firing of employees and performance evaluations. (Id., Ex. B (Larson Dep. at 24); Ex. A (Berscheid Dep. Ex. 7).) NRS asserts that Plaintiff was hired primarily as branch manager, but the fact that he could perform RT duties was considered by NRS as an additional asset. (Id., Ex. B. (Larson Dep. at 29-31).) Plaintiff also

performed some respiratory therapy services, such as setting up BiPAP, CPAP and ventilator machines for customers.  (Id., Ex. A (Berscheid Dep. at 56).)

NRS branch manager/non RTs are considered non-exempt employees, and are paid on an hourly basis.  (Id., Ex. B. (Larson Dep. at 21); Ex. F (Altman Dep. at 19).)  Staff respiratory therapists are also considered non-exempt employees, paid on an hourly basis.  (Id., Ex. B. (Larson Dep. at 20).)  Branch manager/non RTs do not have different management duties than a branch manager/RT.  (Id. (Larson Dep. at 23-24); Ex. F (Altman Dep. at 5-6).)  Branch manager/non RT Richard Altman testified that he does receive time and one-half for overtime hours worked.  (Id., Ex. F (Altman Dep. at 19).)

Plaintiff asserts that he was to be available on certain days to handle calls that came in off hours and on weekends or holidays.  (Id., Ex. A (Berscheid Dep. at 73, 122).)  NRS asserts that Plaintiff was given the option to schedule himself for on-call service.  He was not required to do so, however.  (Id., Ex. B (Larson Dep. at 42-43); Ex. D (Van Beusekom Dep. at 18-19).)  Plaintiff did opt to respond to RT service calls in his area.  (Id., Ex. A (Berscheid Dep. at 126).)  When he did respond to on-call requests, he recorded his time on his bi-weekly timesheets.  (Id., (Berscheid Dep. Ex. 24).)

The pay records submitted to the Court indicate that Plaintiff was initially paid $27.50 per hour for on-call hours worked during the evenings or weekends. (Compare (Berscheid Dep. Exs. 24 )(time sheets)(Bates No. 0318) and (Berscheid Dep. Ex. 27)(weekly pay stubs)(Bates No. 0384).)  Starting in August, 2008, the pay rate for on-call work was $40.50 per hour.  (Id. (Berscheid Dep. Ex. 27 (Bates No. 0369-72).)  Starting October 3, 2008, the rate increased to $42.00 per hour, then to $42.38 per hour.  (Id. (Bates Nos. 0354-67).)  The weekly pay stubs indicate that regardless of the number of hours Plaintiff worked during the business day, he was paid on a salary basis.  (Id. (Berscheid Dep. Ex. 27).)

NRS asserts that in August 2008, a new human resources manager started and mistakenly began paying Plaintiff at a rate of time and one-half.  (Id., Ex. B (Larson Dep. at 45-46); Ex. A (Berscheid Dep. Ex. 28).)  When the mistake was discovered, Tawnia Pleski, in NRS human resources, sent an email to branch managers informing them that they had been mistakenly paid time and one-half, and that the correct rate was $27.50 per hour for on-call work. (Id. Ex. A (Berscheid Dep. Ex. 28).)  Plaintiff asserts that he was told by NRS when hired that he would be paid time and one-half for on-call hours worked, and that he would not have accepted the job for less.  (Id.)  There is no evidence in the record,

4

however, that prior to August 2008, Plaintiff complained that he was being paid the incorrect rate for on-call hours worked or other overtime, over and above forty hours per week.

On April 22, 2009, NRS terminated Plaintiff's employment.  NRS asserts the termination was for multiple reasons, including customer complaints, lack of judgment, failure to complete required work and dissatisfaction with pay.  (Id. Ex. B (Larson Dep. at 60-62); Fieberg Affidavit Ex. 44.)  Plaintiff asserts he was fired because he complained about his pay.

In his Complaint, Plaintiff alleges that under the FLSA and the MFLSA, he was entitled to pay at a rate of time and one-half for every hour worked over forty hours per week.  He seeks damages for unpaid overtime, liquidated damages and a determination that NRS acted willfully.

## II.     Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  This burden can be met "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### III. Analysis

#### A.  FLSA Claim

Under the FLSA,

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  This provision does not apply, however, to a "bona fide executive, administrative or professional employee."  29 U.S.C. § 213(a)(1).  "This exemption is 'narrowly construed in order to further Congress' goal of providing broad federal employment protection.'"  Spinden v. GS Roofing Prods. Co., Inc., 94 F.3d 421, 426 (8th Cir. 1996) (quoting McDonnell v. City of Omaha, Neb., 999

F.2d 293, 295 (8th Cir. 1993) cert. denied, 510 U.S. 1163 (1994)).  The employer has the burden of proving the exemption applies by "demonstrat[ing] that their employees fit 'plainly and unmistakably within the exemption's terms and spirit.'" Id.

"Under the FLSA, to determine whether an employee is an exempt 'executive, administrative, or professional' employee, a court must apply Department of Labor regulations that have been judicially construed in over fifty years of litigation."  Fife v. Bosley, 100 F.3d 87, 89 (8th Cir. 1996) (citing, Murray v. Stuckey's, Inc., 50 F.3d 564 (8th Cir.), cert. denied, 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995)).

The relevant regulations provide that

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100 (a).

The regulations further define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700 (a). Further, the regulations provide

> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700(b).

### 1. Was Plaintiff paid on a salary basis of not less than $455 per week?

NRS asserts that Plaintiff was paid on a salary basis of more than $455 per week, as indicated on his hiring letter. (Laudon Aff., Ex. A (Berscheid Dep. Ex. 2).) "[Y]our starting rate will be $54,000/ year beginning on your first day of employment Monday, September 11, 2006." (Id.) Plaintiff asserts that since the

letter did not use the term "salary", the Court should not consider him a salaried employee. Further, at his annual reviews, any wage increase was determined as to an hourly wage, not a yearly salary. (Id., Ex. A (Berscheid Dep. Ex. 23.)

The regulations provide that an employee is paid on a salary basis when the employee receives a predetermined amount each paycheck, which does not vary based upon the quality or quantity of work performed. 29 C.F.R. § 541.602(a). An employee may receive additional compensation without violating the salary basis as long as the employee is "guarantee[d] at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). The fact that the employee is required to submit time sheets has no bearing on whether the employee is salaried, as long as the compensation did not vary. See Nelson v. Ellerbe Becket Const. Serv., 283 F. Supp. 2d 1068, 1077-78 (D. Minn. 2003).

Here, Plaintiff's pay stubs demonstrate that he received the same rate of pay for hours worked during the regular work day, regardless of the actual hours worked. (Laudon Aff., Ex. A (Berscheid Dep. Ex. 27).) It thus appears that Plaintiff was paid on a salary basis.

    **2.**    **Were Plaintiff's primary duties the management of the branch office?**

"Management" is defined in the regulations as follows:

Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Rather than analyzing the specific duties he performed to determine whether such duties fall under "management," Plaintiff simply argues that none of his duties were exempt because NRS treated branch manager/non RTs and RTs as non-exempt.

NRS asserts that Plaintiff's primary duties were managerial as that term is defined in the regulations. Plaintiff was hired primarily as a branch manager. At his deposition, Plaintiff admitted that his duties included employee training (Laudon Aff., Ex. A (Berscheid Dep. at 22, 34, 100)), approving employee overtime

and leave (id. at 34-35, 44), recommending changes in employee's salaries (id. 24-25), scheduling and apportioning work (id. at 48, 102), designing delivery routes (id. at 21), and conducting annual employee reviews. (id. at 24.) He also disciplined employees (id. at 43), handled their grievances (id. at 40-41) and customer complaints. (id. at 42). Plaintiff also admitted that he was responsible for maintaining branch inventory (id. at 21, 51), approving office expenses (id. at 47) and providing for the safety and security of employees and the premises. (id. at 99.) Plaintiff attended annual planning sessions and had input into the goals and direction for the company. (Id. at 64-65.)

NRS asserts that Plaintiff's primary duties were the managerial duties and that he spent at least one-half of his time performing such duties. (Id. at 33.) Even if he spent only half of his time performing management duties, NRS considered those duties to be the most important as they were the only duties upon which Plaintiff's performance was evaluated. (Id., Ex. B (Larson Dep. at 31).) Further, NRS asserts that Plaintiff managed the Albany office with little supervision from higher level managers. As an example, NRS notes that Plaintiff handled the Albany office relocation single-handedly. (Id. at 28-29.) Furthermore, in his brief in support of summary judgment, Plaintiff concedes that his primary duties were

managing the branch office. (Pl. Brief at 5.)

NRS asserts that it did treat branch manager/RTs differently than branch manager/non RTs by paying the former at a higher rate. Branch manager/non RTs do have similar management duties as branch manager/RTs, but perform additional duties as a service technician, such as performing routine oxygen delivery, filling oxygen tanks, and being part of the service technician on-call route. (Laudon Aff., Ex. G at 5.) Further, branch manager/non RTs were paid less than branch manager/RTs. For example, Rich Altman, a branch manager/non RT earns $17.75 per hour, while Plaintiff's hourly rate of pay was $28.00 per hour. (Id., Ex. F (Altman Dep. at 19) Ex. A (Berscheid Dep. Ex. 23). Plaintiff's higher salary incorporated compensation for hours worked over forty hours per week. See, Auer v. Robbins, 65 F.3d 702, 712 (8th Cir. 1995) aff'd 519 U.S. 452 (1997) (court took into consideration pay rate in determining whether position was exempt from the FLSA).

Based on the above, the Court finds that this factor weighs in favor of finding Plaintiff's position exempt under the FLSA overtime requirements.

       **3.**    **Did Plaintiff customarily and regularly direct the work of two or more other employees?**

Plaintiff testified that he routinely directed the work of the five other employees at the Albany branch by apportioning their work, directing their day-to-day duties, scheduling and dispatch. (Id., Ex. A (Berscheid Dep. at 22).) This factor also weighs in favor of finding Plaintiff's position exempt.

### 4. Did Plaintiff have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight?

Plaintiff testified that he regularly made recommendations as to the other employee's salaries in conjunction with their annual reviews, and such recommendations were either completely or substantially adopted. (Id. at 24-25, Dep. Exs. 11-14).)

### 5. Conclusion

There are no genuine issues of material fact with regard to Plaintiff's job duties and his payment history. As the undisputed facts weigh in favor of a finding that Plaintiff was an exempt executive, Plaintiff's claim for overtime compensation under the FLSA has no merit. NRS is thus entitled to summary judgment on the FLSA claim.

**B. MFLSA**

The MFLSA provides:

> No employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed. . . .

Minn. Stat. § 177.25, subd. 1.

Plaintiff argues that for the same reasons he is entitled to overtime compensation under the FLSA, he is also entitled to overtime compensation under the MFLSA.

NRS argues that under the MFLSA, executives are also exempt from its wage and hour requirements. Minn. Stat. § 177.23, subd. 7(6). Minnesota regulations provide that under the Executive Test, an employee is an exempt executive if he receives at least $250 per week in salary; manages the enterprise by which the person is employed or a recognized department or subdivision thereof; and customarily directs the work of two or more other employees. Minn. R. 5200.0190, subpt. 1. An employee receives a salary if he receives guaranteed predetermined wages each week. Minn. R. 5200.0211, subpt. 1. Management duties include decision-making, issuing directions to other employees, using skill and judgment. Minn. R. 5200.0180, subpt. 2.

For the reasons stated above, the Court finds that Plaintiff is an exempt employee under the MFLSA. Accordingly, NRS is entitled to summary judgment on the MFLSA claim as well.

IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Summary Judgment [Doc. No. 31] is DENIED.

2. Defendant's Motion for Summary Judgment [Doc. No. 27] is GRANTED.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Date: March 18, 2011

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court
